UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.A.T.R. ,<br><br>Petitioner(s),<br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondent(s). | CASE NO. C26-3710-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner entered the United States in 2022 and has resided in this country since then. He was arrested by United States Immigration and Customs Enforcement ("ICE") agents in September 2026, and the Government maintains that he is subject to mandatory detention. He filed a petition for a writ of habeas corpus under 28 U.SC. § 2241, arguing, among other things, that detaining him without any individualized determination of its justification is unconstitutional. Dkt. No. 1. The Government[1] filed its return and Petitioner has filed a traverse, and the petition is now ripe for resolution.

For the following reasons, the Court finds that Petitioner's detention is unlawful and will grant the petition and order the release of Petitioner.

[1] In this order, the Court refers to the federal Respondents collectively as "the Government."

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela who entered the United States without inspection in September 2022. Dkt. No. 15 ¶ 3. He was apprehended by U.S. Border Patrol and released from custody on parole. Dkt. No. 16-2. In December 2023, Petitioner was served with a notice to appear and charged with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. Dkt. No. 16-1. The Department of Homeland Security issued an order of release on recognizance ("OREC") at that time, explaining the conditions of Petitioner's release while awaiting removal proceedings. Dkt. No. 16-3. Petitioner allegedly failed to appear at his master calendar hearing in immigration court in April 2026, and was allegedly ordered removed to Venezuela *in absentia*.[2] Dkt. No. 5 ¶ 12. During summer 2026, Petitioner became engaged to a United States citizen. Dkt. No. 18 ¶ 6, Dkt. No. 19 ¶ 1.

On September 5, 2026, an anonymous person[3] told ICE agents that Petitioner committed murder in Venezuela and was committing drug crimes in the United States. Dkt. No. 16-4 at 2, 4. Petitioner's OREC was canceled on September 9, 2026, and a warrant for his arrest was issued on September 8, 2026, citing a "Final Order of Removal by an immigration judge." Dkt. Nos. 16-5, 16-6. Masked ICE officers encountered Petitioner during routine enforcement operations on September 29, 2026, and arrested him, transporting him to Northwest ICE Processing Center "pending removal." Dkt. No. 16-4 at 3–4.

Petitioner filed a petition for a writ of habeas corpus requesting immediate release. Dkt. No. 1. For the following reasons, the Court grants the habeas petition.

---

[2] Petitioner's declaration suggests he was not notified of this hearing. Dkt. No. 18 ¶ 5. The Government has not submitted a copy of the *in absentia* removal order or of any paperwork setting the master calendar hearing, which may have provided information about whether Petitioner was properly notified of either the hearing or the removal order.

[3] Petitioner's fiancée filed a declaration stating that this person is her stepfather, who does not approve of her engagement to Petitioner. Dkt. No. 19 ¶ 3.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner

received the process appropriate to his circumstances, after determining the governing detention authority.

**A. Petitioner Is Not Subject to Mandatory Detention.**

To determine whether Petitioner's re-detention complies with due process, the Court must first determine the statutory authority governing Petitioner's re-detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

Petitioner asserts his re-detention is governed by 8 U.S.C. § 1226(a) because he was released on an OREC after he entered the United States, while the Government asserts he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission." Dkt. No. 1 ¶ 48, Dkt. No. 14 at 2–3.

In *Jennings v. Rodriguez*, the Supreme Court explained that "[r]ead most naturally, § 1225(b)(1) … mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. at 297. Under § 1225(b)(1), "applicants for admission" "are detained for 'further consideration of the application for asylum[.]'" *Id.* (quoting 8 U.S.C. §§ 1225(b)(1)). However, "[o]nce those proceedings end, detention under § 1225(b) must end as well." *Id.* Three years later, analyzing the relationship between the provisions of the INA, the Supreme Court observed that the INA's structure generally tracks "the sequential steps of the removal process." *Johnson v. Guzman Chavez*, 594 U.S. 523, 543 (2021). While "Sections 1221 to 1224 address the arrival" of noncitizens, "Section 1225 provides instructions for inspecting [noncitizens], expediting the removal of some, and referring others for a removal hearing … And § 1231 explains what to do if the [noncitizen] is ordered removed." *Id.* at 543–44.

Under Section 1231(a), "[w]hen [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *see also* 8 U.S.C. § 1231(a)(2)(A) (stating that during the 90-day removal period, the government "shall detain" the noncitizen"). Although 8 C.F.R. § 1241(e) provides that an *in absentia* removal order is final on the date it is entered by an immigration judge, the Ninth Circuit has held that an *in absentia* removal order becomes final either 180 days from the date the *in absentia* order is issued, or if a timely motion to reopen is filed and denied, then the date the Board of Immigration Appeals affirms the denial of the motion to reopen. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021).

In this case, at the time that Petitioner was re-detained in September 2026, the Government contends that he had been ordered removed via an *in absentia* order fewer than 180 days earlier and acknowledges that this alleged removal order was therefore not administratively final at the time of Petitioner's re-detention. Dkt. No. 14 at 3. Accordingly, the Court rejects the Government's attempt to categorize Petitioner as subject to mandatory detention under Section 1225(b)(2)(a).[4]

[4] Many courts, including the Ninth Circuit, have rejected the application of Section 1225(b)(2)(A) to a noncitizen such as Petitioner, who was previously released and has been living in this country since 2022. *See, e.g.*, *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193 (9th Cir. 2026) (concluding that Section 1225(b)(2)(A) applies to "unadmitted aliens entering the United States at the border" and that Section 1226 governs "unadmitted aliens present in the interior of the country"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D.

Therefore, the Court will now consider whether Petitioner's re-detention comports with due process under *Mathews*.

**B. Petitioner's Re-Detention Does Not Comport With Due Process.**

In this case, all three *Mathews* factors favor Petitioner.

First, Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioner has lived in the United States for more than four years and is engaged to a United States citizen. *Id.* That Petitioner was arrested in September 2026 and remains in custody undoubtedly presents a deprivation of Petitioner's interest in his liberty, as the Government acknowledges. Dkt. No. 14 at 7–8. The Court finds that Petitioner's interest in his liberty is constitutionally protected. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). The Government argues that Petitioner's interest is "tempered by the documented failures to appear for scheduled check-ins and hearings" that purportedly led to an *in absentia* removal order, but nonetheless acknowledges that this factor weighs in Petitioner's favor. Dkt. No. 14 at 8.

Second, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of adequate notice of the justification for detention. Any *in absentia* removal order is not administratively final and, as noted above, the Government made no effort to promptly detain

---

Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).

Moreover, none of the documents in the record supports a finding that Section 1225(b) applies to Petitioner. Instead, the documents exclusively reference Section 1226(a). *See* Dkt. No. 16-1, 16-3, 16-5.

The Court hereby notifies the Government that if it continues to advance arguments inconsistent with Ninth Circuit precedent and the record, the Court will consider imposing sanctions under Federal Rule of Civil Procedure 11.

Petitioner after the removal order was allegedly entered. Instead, the timeline suggests that the unsubstantiated anonymous tip led to the revocation of Petitioner's OREC and the issuance of the arrest warrant. Even if the unsubstantiated accusations or failures to appear as scheduled could properly justify revoking Petitioner's OREC, the Government has not shown that Petitioner received notice of either, or why such notice is not required. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). That Petitioner disputes the accusations as well as the alleged failures to appear, combined with the internal inconsistencies[5] and gaps in the Government's documentation, increase the Court's concern that pre-deprivation notice is necessary. Thus, the second *Mathews* factor weighs in Petitioner's favor.

And third, the Court finds that the Government's interest in re-detaining non-citizens previously released without process is "minimal": any administrative or financial burdens in providing Petitioner notice or a hearing before OREC revocation are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Particularly because Petitioner's alleged failures to appear are alleged to have occurred months or years before Petitioner's OREC was revoked, the Government has not shown that its interest in

[5] The Government submitted a Form I-213 stating that Petitioner's failure to appear at a hearing on May 14, 2025, led to an *in absentia* removal order, yet the Government also submitted a declaration from a deportation officer stating that Petitioner's failure to appear at a hearing on April 29, 2026, led to an *in absentia* removal order. *Compare* Dkt. No. 15 ¶ 12 *with* Dkt. No. 16-4 at 4. And again, the Government's failure to submit a copy of the *in absentia* removal order or any documentation of the scheduled hearings or check-ins that Petitioner allegedly failed to attend do not, to say the least, inspire the Court's confidence in the Government's process.

enforcing immigration laws must be satisfied immediately. *See* Dkt. No. 14 at 8–9. The third *Mathews* factor thus weighs in Petitioner's favor.

Accordingly, because all three *Mathews* factors favor Petitioner, the Court finds that Petitioner's due process rights have been violated and now considers the appropriate remedy.[6]

**C. Immediate Release Is the Appropriate Remedy.**

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

Although Petitioner requests that the Court order the Government to join in a motion to extend his deadline to move to reopen his removal proceedings (Dkt. No. 17 at 22), the Court finds this relief unnecessary because the Court will order that he be released from custody before that deadline expires and he will therefore have an opportunity to file a timely request.

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that Petitioner shall be released from custody no later than October 22, 2026, on the

[6] Because complete relief may be provided on Petitioner's due process claim, the Court need not address his other grounds for relief. *See* Dkt. No. 1 ¶¶ 33–39, 42–45.

terms of his prior OREC. The Government shall file a status report no later than October 23, 2026, to confirm Petitioner's release in compliance with this order.

The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 21st day of October, 2026.

Kymberly K. Evanson
United States District Judge